IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GARY DEWAYNE HILL,       §
TDCJ No. 2005493,         §
                          §
        Petitioner,        §
                          §
V.                        §        No. 3:17-cv-2895-D-BN
                          §
DIRECTOR, TDCJ-CID,       §
                          §
        Respondent.        §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Gary Dewayne Hill, a Texas prisoner, was convicted by a jury of

robbery and sentenced by a court to 25 years of imprisonment. *See State v. Hill*, No.

F-1453561-U (291st Jud. Dist. Ct., Dallas Cnty., Tex.). The judgment against Hill was

affirmed on direct appeal, and the Texas Court of Criminal Appeals ("CCA") refused

his petition for discretionary review. *See Hill v. State*, No. 05-15-00756-CR, 2016 WL

4009756 (Tex. App. – Dallas July 22, 2016, pet ref'd); *Hill v. State*, No. PD-953-16

(Tex. Crim. App. Nov. 2, 2016).

The CCA then denied Hill's state habeas application without written order. *See

Ex parte Hill*, WR-54,080-06 (Tex. Crim. App. Sept. 27, 2017) [Dkt. No. 14-17].

And Hill filed this *pro se* action – raising for federal habeas review the two

claims he raised in the state habeas petition – on October 5, 2017, the date on which

he certifies that he placed his 28 U.S.C. § 2254 petition [Dkt. Nos. 2 & 3] in the prison

mailing system,[1] *see* Dkt. No. 2 at 10.

His case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge Sidney A. Fitzwater. The State responded to the Hill's habeas application. *See* Dkt. No. 13. And Hill filed a reply brief. *See* Dkt. No. 15.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Applicable Background

The factual background is drawn from the Dallas Court of Appeals's decision:

> The robbery occurred in an Ace Cash Express Store just after closing on March 21, 2014. The manager, Shunda Small, and a trainee, Joyce Jordan, were walking out the door when Hill, [Hill's co-defendant, Elijah] Haywood, and a third man made their way into the store, demanded money from the safe, and threatened to kill them if they did not comply. The robbery was interrupted, however, when the police, alerted by Small who triggered a panic alarm, arrived minutes later. The men fled to a nearby field, but after a brief pursuit, Hill and Haywood were caught and arrested. The third robber escaped.
>
> Following the arrests, Hill and Haywood were held in separate squad cars while the arresting officers searched the field for items the officers saw Hill and Haywood discard as they fled from the store. In the field, the officers found several items used during the robbery, including gloves, an air pistol, and a shirt. Hill's cell phone was also seized, and text messages on the phone to and from Haywood and a third person showed the men had planned the robbery over a period of time.
>
> Hill and Haywood were tried separately, and neither testified at

---

[1] *See* Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

Hill's trial.

*Hill*, 2016 WL 4009756, at *1.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2244(d) as "impos[ing] two significant restrictions on

federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on

their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 970 F.3d 566, 573 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* at 573-74 (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only

the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal

quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not

only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 970 F.3d at 575.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny

relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

In his Section 2254 application, Hill attacks his state criminal judgment on two grounds: (1) that the trial court erred by admitting into evidence hearsay statements by Haywood, an issue raised and rejected on direct appeal; and (2) that the prosecution withheld Haywood's statements in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

I.   The Dallas Court of Appeals's denial of Hill's Confrontation Clause Claim was <u>not unreasonable</u>.

Hill initially raised his first habeas claim on direct appeal, so the Court should "look through" to the Dallas Court of Appeals's substantive denial of that claim.[2]

> Hill's first issue stems from statements Haywood made to the officer tasked with watching Haywood while the arresting officers searched the field. The record reflects Haywood commented to the officer "this is my first time – my first offense down here" and asked "what kind

---

[2] *Cf. Caldwell v. Davis*, 757 F. App'x 336, 340 (5th Cir. 2018) (per curiam) ("[B]ecause the order on collateral review did not consider the merits of Caldwell's claims, we "look through" to the last state court decision to do so: the state intermediate appellate court's decision on direct review." (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991))); *Leachman v. Stephens*, 581 F. App'x 390, 395 (5th Cir. 2014) ("a state habeas decision [ ] found that the petitioner's argument[ ] has been 'previously considered and rejected' on direct appeal[, and] ... 'in light of that determination' [this Court should] 'examine the last clear state court decision of any substance'" (quoting *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012))).

of time do you think I'll get down here?" Haywood also asked the officer, "did you only catch the two of us, my cousin and me?" The statements were made about ten minutes after the officer began watching Haywood and were made "out of the blue," as the officer had not been talking to Haywood. The officer did not respond to either question, did not record the statements, and did not make a report.

Seeking to introduce into evidence Haywood's comment and questions to the officer, the State called the officer as a witness. Asserting in relevant part that Haywood's hearsay statements were testimonial because Haywood was in custody, Hill objected their admission would violate his rights under the Confrontation Clause. The trial court, however, concluded the statements were non-testimonial and allowed the officer to testify about them. Hill contends this ruling was error and, because the statements were "definitive and persuasive evidence" establishing Hill was one of the robbers, argues further that the admission of them contributed beyond a reasonable doubt to his conviction.

### A. Applicable Law

The Confrontation Clause of the Sixth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, ensures the reliability of evidence against a criminal defendant by affording the defendant the right to cross-examine the witnesses against him. *See* U.S. CONST. amend VI; *Crawford v. Washington*, 541 U.S. 36, 61 (2004); *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). It was designed to prohibit the use of ex parte examinations as evidence against a defendant and applies to out-of-court, hearsay statements by individuals who "bear testimony," that is, who make a formal or solemn statement "for the purpose of establishing or proving some fact" against the defendant. *Crawford*, 541 U.S. at 50-51.

Under the Confrontation Clause, a hearsay statement that is testimonial and made by a non-testifying declarant is inadmissible as evidence against the defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 59, 68; *Woodall v. State*, 336 S.W.2d 634, 642 (Tex. Crim. App. 2011). Although the term "testimonial" has not been defined, it includes (1) prior testimony before a grand jury, at a preliminary hearing, or at a former trial; (2) statements made during police interrogations that have as a primary purpose establishing past events potentially relevant to later criminal prosecution rather than attending to an "ongoing emergency;" and (3) statements made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52, 68; *Davis v. Washington*, 547 U.S. 813, 822

(2006); *see also Neal v. State*, 186 S.W.3d 690, 692-93 (Tex. App. – Dallas 2006, no pet.) (noting other appellate courts, in determining whether statement to police is testimonial, have considered whether interaction with police was initiated by declarant and whether statement was (a) official and formal in nature; (b) spontaneous; and (c) in response to preliminary question by police while assessing and securing crime scene). Statements under the last two categories need not be sworn, but they must be made under circumstances that impart some degree of formality. *See Davis*, 547 U.S. at 830 & n.5. Statements that are a deliberate retelling of how past events began and progressed or are made "some time after the described events were over," in a place separate from the crime scene or the defendant, and with the risk of being prosecuted for lying have been found to be "formal enough." *Id.* at 830 & n.5.

### B. Standard of Review

An appellate court reviews *de novo* a ruling as to whether a statement is testimonial. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). In determining whether a statement is testimonial, the reviewing court looks at all the relevant circumstances and inquires whether an objectively reasonable declarant standing in the shoes of the actual declarant would anticipate his statement being used against the accused in investigating and prosecuting the crime, that is, whether the "primary purpose" of the conversation was to "creat[e] an out-of-court substitute for trial testimony." *See Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015); *Michigan v. Bryant*, 562 U.S. 344, 369 (2011); *Wall*, 184 S.W.3d at 742-43 & n.45. Because a violation of the Confrontation Clause is constitutional error, a reviewing court must reverse the trial court's judgment unless it determines beyond a reasonable doubt the error did not contribute to the defendant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010).

### C. Application of Law to Facts

Viewing the relevant circumstances, we conclude Haywood's comment and questions to the officer were non-testimonial and did not implicate the Confrontation Clause. Unlike the ex-parte examinations the Confrontation Clause was designed to exclude, Haywood's statements were not instigated or facilitated by the officer, and the officer was not acting with the purpose of collecting evidence against Hill. In fact, the officer did not even speak with Haywood or record the statements. Further, although Haywood was under arrest at the time, the statements were made at the scene in an informal, unstructured setting, did not detail the events and Hill's role leading to and during the robbery, and were unsolicited and spontaneous. On the record before us, we conclude the "primary purpose" of Haywood's statements was not

to "creat[e] an out-of-court substitute for trial testimony." *See Clark*, 135 S. Ct. 1518. Accordingly, the trial court did not err in allowing the officer to testify as to Haywood's statements. *Compare, e.g.*, *Wilson v. State*, 151 S.W.3d 694, 698 (Tex. App – Fort Worth 2004, pet. ref'd) (appellant's girlfriend's statements to officer non-testimonial where girlfriend initiated interaction with officers and officers did not interrogate her or pose "tactically structured" questions regarding "known criminal activity") *with Lee v. State*, 143 S.W.3d 565, 566, 569-71 (Tex. App. – Dallas 2004, pet. ref'd) (co-defendant's statement to officer in response to officer questioning during traffic stop after appellant had been arrested testimonial). We decide Hill's first issue against him.

*Hill*, 2016 WL 4009756, at *1-*3.

The Dallas Court of Appeals "specifically found that [Haywood's] statements were non-testimonial, and so in order to prevail, [Hill] must show that this finding represents an unreasonable application of clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Johnson v. Directors, TDCJ-CID*, No. 9:11cv124, 2012 WL 2277844, at *10 (E.D. Tex. May 10, 2012) (citation omitted), *rec. adopted*, 2012 WL 2277839 (E.D. Tex. June 15, 2012).

This heightened unreasonableness standard of review does not afford relief just because this Court may disagree with the state court's conclusion that Haywood's statements were non-testimonial. Instead, to warrant relief, the state court's conclusion must be "'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" *Sanchez*, 936 F.3d at 305 ("[T]his is habeas, not a direct appeal, so our focus is narrowed."); *see also Johnson*, 2012 WL 2277844, at *11 ("The federal court cannot reverse a state court decision merely because the federal court would reach a different outcome; rather, the federal court must conclude that the state court applied a correct legal rule to a given set of facts in a manner which was

- 12 -

so patently incorrect as to be unreasonable." (citing *Gardner*, 247 F.3d at 560)).

Hill has not shown that the state court's reasoned application of *Crawford* to the set of facts before it – and its conclusion that Haywood's statements were non-testimonial, particularly given their voluntariness in the setting in which they were made – "was so patently incorrect as to be unreasonable, nor has [Hill] offered clear and convincing evidence to overcome the presumption that the factual determinations made by the state court in this regard were correct." *Johnson*, 2012 WL 2277844, at *11; *see also* 28 U.S.C. § 2254(e)(1); *Gardner*, 247 F.3d at 560; *Valdez*, 274 F.3d at 948 n.11; *Ford*, 910 F.3d at 235.

The Court should therefore deny this ground for habeas relief.

II.    <u>The CCA's adjudication of Hill's *Brady* Claim was not unreasonable.</u>

Hill's second ground for relief is that, because "[t]rial attorney routinely submit requests for discovery of all evidence that will be use[d] against defendant to prepare a defense for trial," "[c]learly the trial court with[held an] oral statement that was made by co-defendant to use later in trial." Dkt. No. 2 at 6; *see also* Dkt. No. 3 at 17-18 (generally asserting that the allegedly withheld statement as made by Haywood to Officer Torres and implying that there must have been a withheld statement based on his trial counsel's reaction to the admission of Haywood's non-testimonial statements that are the subject of the first habeas ground).

"Under *Brady* and its progeny, due process requires that the prosecution disclose evidence that is both favorable to the defendant and material to guilt or punishment." *Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018) (per curiam) (citing *Brady*, 373 U.S. at 87); *see id.* at 161-62 ("This duty to disclose exists irrespective of

- 13 -

a request from the defense, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and extends to all evidence known not just to the prosecutors, but 'to the others acting on the government's behalf in the case, including the police,' *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).").

"A successful *Brady* claim has three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Rocha v. Thaler*, 619 F.3d 387, 393 (5th Cir. 2010) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also Floyd*, 894 F.3d at 162 (identifying "*Brady*'s three requirements [as] suppression, favorability, and materiality").

And federal court reviewing a state court's denial of a *Brady* claim under Section 2254 must "determine whether there is any reasonable theory, consistent with clearly established federal law as determined by the Supreme Court, to support the state courts' conclusions." *Floyd*, 894 F.3d at 162.

Here, the CCA's rejection of Hill's *Brady* claim is supported by Hill's failure to identify the evidence that the State allegedly did not disclose. His conclusory framing of this claim prevented the state court from analyzing whether any of the three required *Brady* elements exist. The denial of this claim was therefore not unreasonable, and the Court should also deny this ground for habeas relief.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 1, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE